[No. 10,464.]

EX PARTE DUNCAN on HABEAS CORPUS.

BAIL.—In .fixing the amount of bail, the sole purpose which should guide the court or judge, should be to cause the appearance of the accused to answer the charge against him.

SAME—HABEAS CORPUS.—Upon an application of a prisoner, after commitment upon a writ of *habeas corpus*, for reduction of bail, the court or judge before whom he is brought is not authorized to interfere unless the bail demanded is *per se* unreasonably great, and clearly disproportionate to the offense charged. A mere difference of opinion, between the court or the judge and the committing magistrate or court, is not sufficient to justify such interference.

SAME—SAME.—Upon an application to reduce bail after an indictment, the guilt of the prisoner is presumed.

Application for reduction of bail on writ of *habeas corpus.*

The facts are stated in the opinion.

*A. Cohen,* for Petitioner.

*E. C. Marshall, contra.*

By the Court, WALLACE, C. J.:

This is an application for an order that the prisoner be let to bail " in a reasonable amount," and that the order of the Municipal Criminal Court, fixing the amount of his bail at the sum of $113,000, be modified in respect to the sum demanded.

The petition sets forth that the prisoner is in the custody of the Sheriff of the City and County of San Francisco, and confined in the jail of said city and county, awaiting his trial upon ten indictments found against him by the grand jury, " eight of said indictments being for forgery, one for grand larceny, and one for felony in making and publishing false returns as an officer of the Pioneer Land and Loan Association, a corporation." That one of the indictments for forgery is upon a charge involving the sum of $2,750; another, for forgery, the sum of $1,750; the other six indictments for forgery committed in feloniously altering and uttering 3,170 shares of the capital stock of a corporation called "The Safe Deposit Company of San Francisco"; that the market value of these shares at the time of the finding of the indictments was about eight dollars per share, and at the present time about ten dollars per share. That upon one of the indictments for forgery of said capital stock the prisoner has been twice tried, and upon each trial the jury disagreed, and were discharged without finding a verdict. That upon said trials it was claimed by the witnesses for the prosecution, holding the certificates of stock for the forgery of which six of these indictments were found, that the prisoner had obtained upon such certificates the sum of $57,000, and no more. That the prisoner has been confined in the jail awaiting trial upon these indictments ever since the 23rd day of February, 1878, and that no trial has been sought

by the people upon any of the indictments other than upon the one upon which the two mistrials have occurred.

1st. The right of the prisoner to be admitted to bail upon these several indictments, none of them being for a felony capital in grade, is secured to him by the express words of the Constitution. (Art. 1, § 6.)

2nd. And it is further declared by that instrument that excessive bail shall not be required. (Id.)

3rd. The prisoner has accordingly been admitted to bail by the Municipal Criminal Court in the sum of *one hundred and thirteen thousand dollars*, and the general question presented by the petition here is, whether this amount is, under the circumstances, to be deemed excessive within the prohibition of the Constitution, and must therefore be reduced.

The sole purpose which should guide the Court or judge in fixing the amount of bail in any case in which bail is allowed should always be to secure the personal appearance of the accused to answer the charge against him. It is not the intention of the law to punish an accused person by imprisoning him in advance of his trial. Such inhumanity or injustice as inflicting punishment upon him before his guilt has been ascertained by legal means, is not to be imputed to the system of law under which we live, and the provisions found in the American Constitutions, establishing the writ of *habeas corpus*, securing to accused persons imprisoned for felonies less than capital in degree the absolute right to be admitted to bail, and declaring that such bail should not be excessive, strikingly indicate the extreme jealousy with which the common law guards the personal liberty of the citizen from unwarrantable or unnecessary restraint.

4th. But I am unable, after a careful examination of the circumstances surrounding this case, so far as they have been presented to me, to arrive at the conclusion that the amount of bail required of the prisoner is excessive. The able counsel for the prisoner, who has exhausted every means that ingenuity and learning could suggest for the relief of his client, argues that the mere fact that the prisoner is unable to procure the bail demanded of him shows that it is excessive in amount, and should

therefore be reduced. But I am unable to assent to that proposition. Undoubtedly the extent of the pecuniary ability of a prisoner to furnish bail is a circumstance among other circumstances to be considered in fixing the amount in which it is to be required, but it is not in itself controlling. If the position of the counsel were correct, then the fact that the prisoner had no means of his own, and no friends who were able or willing to become sureties for him, even in the smallest sum, would constitute a case of excessive bail, and would entitle him to go at large upon his own recognizance.

Upon a former occasion, (January term, 1879) the prisoner applied to the Supreme Court for an order reducing the amount of his bail, and the application was, upon consideration by all the justices, refused. (*Ex parte Duncan*, 53 Cal. 410.) Unless the circumstances now disclosed make a case materially different from the case then made to appear, I should be disinclined to depart from what was then determined. We then said (and I think that it may, with propriety, be repeated now) as follows: " The question is not whether we would have exacted so great a sum in the first instance, had the proceedings to let him to bail been originally before us—in other words, the inquiry is not whether a mere difference of opinion may have been developed between this Court and the Municipal Criminal Court as to the amount of bail to be exacted in this case. We are not to assume, in this case, the functions of the Court committing the prisoner, or substitute our own for its judgment in fixing the amount of bail. Before we are authorized to interfere, the bail demanded must be *per se* unreasonably great, and clearly disproportionate to the offense involved."

Adhering as I do to the views then expressed, it remains to inquire what circumstances, if any, now disclosed, present a case materially different from the one then presented. The fact that two trial juries have been impanneled, and after hearing the evidence and the instructions of the Court, have disagreed and been discharged without rendering a verdict, is relied on as furnishing a new element of the judgment to be now given. But unless I could know with certainty what evidence was given upon those trials, the fact that a disagreement in the jury-box

had repeatedly occurred would not go far to induce me to undo how what has been done here before in this case. The significance to be attributed to these disagreements would be conjectural merely. One stupid or corrupt juror upon either panel might produce a disagreement, even though the law and the evidence were clearly against the prisoner. As observed by the Supreme Court of Ohio, " One obstinate or corrupt person in a body of twelve will be more commonly successful in preventing a verdict than insufficient testimony." (19 Ohio, 140.) Of course I am not to be understood as implying a reflection upon the gentlemen who served as jurors at these trials. I do not know who they were, and in this proceeding am not permitted to know. Again, the learned judge of the court in which these disagreements occurred, who presided at the trials and heard the evidence given, has, since then, upon application made, refused to reduce the amount of bail originally fixed by him. He had heard the evidence, and had enjoyed repeated opportunities to observe its import, and I, who have had no such opportunity, can hardly be expected to overrule his judgment as to the fair import of that evidence. His refusal to reduce the amount of bail, under the circumstances, is at least of as much significance upon the one hand as is the disagreement of the juries upon the other.

5th. It is next claimed that the amount of bail required is excessive, because disproportionate to the amount which the prisoner is alleged to have obtained as the fruits of his crimes. The authorities generally hold, that, if the accused has property obtained by the commission of the crime, the bail should be for a larger amount than the value of such property; otherwise, the offender might make the crime itself an instrument for escape. This is rather indicating the minimum amount of bail to be required than determining that an amount greater than the value of the property obtained would be excessive in the sense forbidden by the Constitution. It is said for the prisoner, that at the time of the indictment, the value of the forged stock was $29,860, and its present value, $31,700, and that $113,000, the bail demanded, is therefore disproportionate to the sum taken by the prisoner. But if the inquiry is to be gone into in detail.

it does not distinctly appear by the petition what was the sum involved in the indictment for grand larceny, nor what sum, if any, was realized by the prisoner, by reason of the making of false returns as an officer of the Pioneer Land and Loan Association. Besides, it was suggested at the argument upon the part of the people, that, in some way, *twelve hundred thousand* dollars of the money of the depositors of the association had disappeared, through the criminal mismanagement of the prisoner.

Upon the entire case, therefore, so far as I am permitted to look into it on this application, and in view of the judgment given by the Supreme Court on the former application, already referred to, I find myself unable to reach the conclusion that the bail demanded of the prisoner here is excessive, or ought, for any reason, to be reduced by my direction.

In view of the notoriety which the case of the prisoner has attained, and to prevent possible injustice to him, I think it not improper to observe that his repeated failures before the Supreme Court, and before myself, to obtain a reduction of bail, ought not to be suffered to create an impression of his guilt in point of fact. We are not at liberty, in proceedings of this nature, to investigate that question. On the contrary, we are bound by the settled rules of law, as the basis of our judgment, upon this application, to *presume him guilty.* (*Ex parte Ryan,* 44 Cal. 555.)

It results that the petition must be denied, and the prisoner remanded. So ordered.