Filed 11/21/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re GERALD JOHN KOWALCZYK<br><br>    on Habeas Corpus. | A162977<br><br>(San Mateo County<br>Super. Ct. No. 21SF003700A) |

    Gerald John Kowalczyk filed a petition for writ of habeas corpus challenging the trial court's decision denying him bail. We issued an order to show cause and later asked the parties to brief a number of issues, including whether pretrial detention is authorized outside of the circumstances specified in article I, section 12 of the California Constitution. We ultimately dismissed the habeas petition as moot on the motion of the People, the real party in interest, who informed us that petitioner had pled and been sentenced in the underlying criminal matter.

    The California Supreme Court granted review and transferred the matter back to this court with directions to vacate our dismissal order and to "issue an opinion that addresses which constitutional provision governs the denial of bail in noncapital cases—article I, section 12, subdivisions (b) and (c), or article I, section 28, subdivision (f)(3), of the California Constitution — or, in the alternative, whether these provisions can be reconciled." At this juncture, we have received additional briefing from the parties and held oral argument on the question posed.

Adhering to settled principles governing the construction of constitutional provisions, we conclude that the bail provisions of article I, section 28, subdivision (f)(3) can be reconciled with those of article I, section 12 (hereafter section 12 and section 28(f)(3)) and that both sections govern bail determinations in noncapital cases. This means that section 12's general right to bail in noncapital cases remains intact, while full effect must be given to section 28(f)(3)'s mandate that the rights of crime victims be respected in all bail and OR release determinations. In so concluding, we reject any suggestion that section 12 guarantees an unqualified right to pretrial release or that it necessarily requires courts to set bail at an amount a defendant can afford.

## FACTUAL AND PROCEDURAL BACKGROUND

The People charged petitioner by complaint with one felony count of vandalism (Pen. Code, § 594, subd. (b)(1)), three felony counts of identity theft (*id.* § 530.5, subd. (a)), one misdemeanor count of petty theft of lost property (*id.* § 485), and one misdemeanor count of identity theft (*id.* § 530.5, subd. (c)(1)). Petitioner waived arraignment on the complaint, and the court set bail at $75,000. Prior to his preliminary hearing, petitioner filed a motion seeking release on his own recognizance (OR) with drug conditions and electronic monitoring, arguing that he posed no danger to the alleged victims or the community and was a minimal risk for nonappearance at future court proceedings.

At a hearing in May 2021, the prosecutor opposed the bail motion and requested that bail remain set at $75,000. According to the prosecutor, the judge who initially set bail determined that petitioner posed a danger to the public based on the recommendation of a pretrial services report and on petitioner's extensive RAP sheet. Given petitioner's ongoing commission of

2

crimes, including while on probation, the prosecutor argued that no less restrictive nonfinancial conditions could protect the public from him. Petitioner contended otherwise, noting there was no showing of flight risk or a risk of "harm to others" insofar as the charged offenses were property crimes and the majority of his prior offenses were merely theft or drug related. Petitioner also urged consideration of his inability to pay the bail amount and the imposition of alternative conditions, such as drug testing.

The court denied bail altogether and ordered petitioner detained. Although the court indicated it was not worried for the safety of the victims of the charged offenses, it emphasized protection of the public as the primary concern and viewed petitioner's property crimes as a significant public safety issue. The court observed that petitioner was a chronic reoffender whose RAP sheet documented 64 prior convictions and was over 100 pages long. Among those prior convictions were at least four convictions for driving under the influence. Petitioner received the maximum score of 14 on the Virginia Pretrial Risk Assessment Instrument, and the pretrial services report indicated petitioner failed to abide by supervised OR conditions in the last five years. The court also indicated its concern that petitioner might abscond, noting his convictions spanned multiple states and multiple counties in California. Furthermore, petitioner—who was unhoused and unemployed—made no showing of any incentive to remain and attend future court appearances. Highlighting petitioner's unprecedented "level of recidivism," the court found that no nonfinancial or financial conditions could accomplish the goals of protecting the public or ensuring petitioner's appearance at future court proceedings.

At the preliminary hearing in mid-May 2021, the court (a different judicial officer than the two who considered the issue of bail before) held

petitioner to answer to the felony identity theft counts, but not the felony vandalism count, and " 'certified' " the misdemeanor counts to the superior court. The court considered and denied the defense's oral motion to reduce bail, explaining that the prior judge already considered the issue of bail and that the circumstances had not sufficiently changed to warrant disturbing that order.

In mid-June 2021, petitioner again moved to reduce bail or for OR release, contending that he posed no risk to specific victims or the public and that nonfinancial terms could be used to secure his appearance. He also noted he was not held to answer on the felony vandalism charge, which he claimed was a changed circumstance warranting reconsideration of bail. At one point during the hearing, but before the prosecutor raised the issue of petitioner's extensive criminal history and recidivism, the court (a different judicial officer than those before) indicated she did not see a public safety issue in the case. Ultimately, the court denied the motion and declined to disturb the no bail order due to the absence of changed circumstances.

In July 2021, petitioner filed his habeas petition challenging the denial of bail on various grounds. As indicated, we issued an order to show cause but ultimately dismissed the petition as moot. The California Supreme Court granted review, and transferred the matter back to this court with directions to vacate our order dismissing the petition as moot, to conduct further proceedings as appropriate, and to "issue an opinion that addresses which constitutional provision governs the denial of bail in noncapital cases—article I, section 12, subdivisions (b) and (c), or article I, section 28, subdivision (f)(3), of the California Constitution—or, in the alternative, whether these provisions can be reconciled."

4

DISCUSSION

## A. California Constitutional Provisions Relating to Bail

### 1. Early History

In 1849, article I, section 7 of the California Constitution provided: "All persons shall be bailable, by sufficient sureties, unless for capital offenses, when the proof is evident or the presumption great." (Cal. Const. of 1849, art. I, § 7.) Article I, section 6 of the 1849 Constitution also provided: "Excessive bail shall not be required . . . ." These provisions were subsequently joined and set forth in article I, section 6 of the California Constitution of 1879, and in 1974 they were relocated to section 12 with an added provision explicitly permitting OR release at the court's discretion.[1] (*Standish*, *supra*, 38 Cal.4th at p. 874.)

### 2. Propositions 4 and 8 in 1982

In 1982, Proposition 4 proposed to amend section 12 by adding two subdivisions that would "broaden the circumstances under which the courts may deny bail." (Ballot Pamp., Primary Elec. (June 8, 1982) analysis of Prop. 4 by the Legislative Analyst, p. 16.)[2] According to the Legislative Analyst, under new subdivision (b), bail "could be denied in felony cases involving acts of violence against another person when . . . the proof of guilt is

---

[1] In full, this former version of section 12 read: "A person shall be released on bail by sufficient sureties, except for capital crimes when the facts are evident or the presumption great. Excessive bail may not be required. [¶] A person may be released on his or her own recognizance in the court's discretion." (Former Cal. Const., art. I, § 12; *People v. Standish* (2006) 38 Cal.4th 858, 874 (*Standish*) [prior to 1974, there was a " ' "well-established practice of releasing persons accused of crimes on their own recognizance" ' in appropriate circumstances as an alternative to requiring the posting of bail"].)

[2] Petitioner's unopposed request for judicial notice of various documents, including voter information guides, is granted.

5

evident or the presumption of guilt is great and . . . there is a substantial likelihood that the accused's release would result in great bodily harm to others." (*Id.*, analysis of Prop. 4 by the Legislative Analyst, p. 16; see *id.*, text of Prop. 4, p. 17.)  And under new subdivision (c), bail "could be denied in felony cases when . . . the proof of guilt is evident or the presumption of guilt is great and . . . the accused has threatened another with great bodily harm and there is a substantial likelihood that the threat would be carried out if the person were released." (*Id.*, analysis of Prop. 4, p. 16.)  Proposition 4 also proposed to add a constitutional "requirement that the courts, in fixing the amount of bail, consider . . . the seriousness of the offense, the person's previous criminal record, and the likelihood that the person will appear to stand trial[]." (*Ibid.*)

On the same ballot was Proposition 8—known as " 'The Victims' Bill of Rights' "—which would accord a number of constitutional rights to crime victims in areas ranging from bail to restitution.  (Ballot Pamp., Primary Elec. (June 8, 1982) text of Prop. 8, p. 33.)  In particular, Proposition 8 would acknowledge that "[t]he rights of victims pervade the criminal justice system, encompassing not only the right to restitution . . . , but also the more basic expectation that persons who commit felonious acts causing injury to innocent victims will be appropriately detained in custody." (*Ibid.*, italics omitted.)  To accomplish these goals, the proposition explained, "broad reforms in the procedural treatment of accused persons and the disposition and sentencing of convicted persons are necessary and proper as deterrents to criminal behavior and to serious disruption of people's lives." (*Ibid.*, italics omitted.)

With regard to bail, Proposition 8 proposed to repeal section 12 and to substitute section 28, subdivision (e) ("section 28(e)") in its place.  (*Standish*,

6

*supra*, 38 Cal.4th at p. 874; Ballot Pamp., Primary Elec., *supra*, text of Prop. 8, §§ 2–3, p. 33.)  Section 28(e), entitled "Public Safety Bail," provided as follows:  "A person may be released on bail by sufficient sureties, except for capital crimes when the facts are evident or the presumption great. Excessive bail may not be required.  In setting, reducing or denying bail, the judge or magistrate shall take into consideration the protection of the public, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at the trial or hearing of the case.  Public safety shall be the primary consideration.  [¶] A person may be released on his or her own recognizance in the court's discretion, subject to the same factors considered in setting bail.  However, no person charged with the commission of any serious felony shall be released on his or her own recognizance."  (Ballot Pamp., Primary Elec., *supra*, text of Prop. 8, § 3, p. 33, italics omitted.)

Ultimately, Proposition 4 and Proposition 8 both passed, but Proposition 4 received more votes than Proposition 8.  Over a decade later, the California Supreme Court commented that the bail and OR provisions in Proposition 4 prevailed over those in Proposition 8 because the former received more votes than the latter.  (*In re York* (1995) 9 Cal.4th 1133, 1140, fn. 4 (*York*).)  However, the *York* court did not analyze at length whether the two propositions might be harmonized so that both of their bail and OR provisions could be given effect.  (*Standish, supra*, 38 Cal.4th at pp. 876–877.)

In 2006, the California Supreme Court performed such an analysis in *Standish, supra*, 38 Cal.4th 858.  In conducting a "section-by-section comparison of Propositions 4 and 8," the *Standish* court observed their bail and OR provisions were in "direct conflict":  "Proposition 8 would have repealed . . . section 12 [citation], while Proposition 4 amended that provision.

7

[Citation.] Proposition 8 would have rescinded the court's discretion to grant OR release for any serious felony[3] [citation], while Proposition 4 left the court's preexisting discretion intact without any restriction. [Citation.] Proposition 4 stated that all accused persons 'shall' be admitted to bail, subject to certain limitations [citation], while Proposition 8 would have rendered bail discretionary in all cases and would have extended the restrictions it imposed upon bail to OR release." (*Id.* at pp. 877–878.) In view of this analysis and the greater number of votes Proposition 4 received, the court determined that Proposition 4's bail and OR amendments to section 12 took effect, and that Proposition 8's conflicting provisions in section 28(e) did not. (*Id.* at p. 878.)

As relevant here, the voters approved two subsequent amendments. First, in 1994 the voters passed Proposition 189, which expanded the exception in subdivision (b) of section 12 to include persons who have committed "felony sexual assault offenses on another person, when the facts are evident or the presumption great and the court finds based upon clear and convincing evidence that there is a substantial likelihood the person's release would result in great bodily harm to others." (Supp. Ballot Pamp., Gen. Elec., (Nov. 8, 1994) text of Prop. 189, p. 18, italics omitted.) Second, and as will be discussed below, the voters approved Proposition 9 in 2008.

### 3. *Proposition 9 in 2008*

Proposition 9—entitled the " 'Victims' Bill of Rights Act of 2008: Marsy's Law' "—proposed to amend section 28 as added to the Constitution in 1982, including the bail provisions previously held inoperative. (Voter

---

[3]     As noted, *post*, this specific provision rescinding a court's discretion to grant OR release for serious felonies was expressly stricken from section 28 by the passage of Proposition 9 in 2008.

Information Guide, Gen. Elec. (Nov. 4, 2008) text of Prop. 9, §§ 1 & 4.1, pp. 128–130.) Proposition 9 contained a finding that crime victims are entitled to "justice and due process" and that its provisions are necessary "to remedy a justice system that fails to fully recognize and adequately enforce" such rights. (*Id.*, text of Prop. 9, § 2, p. 128.) Specifically, Proposition 9 declared: "The People of the State of California find that the 'broad reform' of the criminal justice system intended to grant these basic rights mandated in the Victims' Bill of Rights initiative measure passed by the electorate as Proposition 8 in 1982 has not occurred as envisioned by the people. Victims of crime continue to be denied rights to justice and due process." (*Ibid.*)

Importantly, Proposition 9 included the following declaration of its purposes and intent: "*The rights of victims also include broader shared collective rights that are held in common with all of the People of the State of California and that are enforceable through the enactment of laws and through good-faith efforts and actions of California's elected, appointed, and publicly employed officials. These rights encompass the expectation shared with all of the people of California* that persons who commit felonious acts causing injury to innocent victims will be appropriately *and thoroughly investigated, [and] appropriately* detained in custody . . . so that the public safety is protected and encouraged as a goal of highest importance."[4] (Voter Information Guide, Gen. Elec., *supra*, text of Prop. 9, § 4.1, p. 129.)

---

[4] The italics in this and in the following quoted text from Proposition 9 reflect the original italicized language appearing in the ballot materials, which informed the reader: "This initiative measure amends a section of the California Constitution and amends and adds sections to the Penal Code; therefore, existing provisions proposed to be deleted are printed in ~~strikeout type~~ and new provisions proposed to be added are printed in *italic type* to indicate that they are new." (Voter Information Guide, Gen. Elec., *supra*, introductory paragraph to text of Prop. 9, p. 128.)

Upon its passage, Proposition 9 amended section 28, subdivision (a), to provide that crime victims had the personally enforceable rights described in subdivision (b)(1) through (17).  (Voter Information Guide, Gen. Elec., *supra*, text of Prop. 9, § 4.1, p. 129.)  In particular, subdivision (b)(3) of section 28 guaranteed the right of crime victims *"[t]o have the safety of the victim and the victim's family considered in fixing the amount of bail and release conditions for the defendant."*  (Text of Prop. 9, § 4.1, p. 129.)

Proposition 9 also added subdivision (f)(3) to section 28, which reflected the same title ("Public Safety Bail") and contained language nearly identical to the language that appeared in Proposition 8's version of section 28(e).  (Compare Voter Information Guide, Gen. Elec., *supra*, text of Prop. 9, § 4.1, p. 130 with Ballot Pamp., Primary Elec., *supra*, text of Prop. 8, p. 33.)  Given its significance to petitioner's contentions, we set forth the following relevant text of proposed section 28(f)(3), as it appeared in the ballot materials:

> *(f) In addition to the enumerated rights provided in subdivision (b) that are personally enforceable by victims as provided in subdivision (c), victims of crime have additional rights that are shared with all of the People of the State of California.  These collectively held rights include, but are not limited to, the following:*
>
> [¶] . . . [¶]
>
> ~~(e)~~ *(3)* Public Safety Bail.  A person may be released on bail by sufficient sureties, except for capital crimes when the facts are evident or the presumption great.  Excessive bail may not be required.  In setting, reducing or denying bail, the judge or magistrate shall take into consideration the protection of the public, *the safety of the victim*, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at the trial or hearing of the case.  Public safety *and the safety of the victim* shall be the primary ~~consideration~~ *considerations*.
>
> A person may be released on his or her own recognizance in the court's discretion, subject to the same factors considered in

setting bail.  ~~However, no person charged with the commission of any serious felony shall be released on his or her own recognizance.~~

>Before any person arrested for a serious felony may be released on bail, a hearing may be held before the magistrate or judge, and the prosecuting attorney *and the victim* shall be given notice and reasonable opportunity to be heard on the matter.

>When a judge or magistrate grants or denies bail or release on a person's own recognizance, the reasons for that decision shall be stated in the record and included in the court's minutes.

(Voter Information Guide, Gen. Elec., *supra*, text of Prop. 9, § 4.1, p. 130.)

Unlike the situation earlier with Proposition 8, Proposition 9 did not propose to repeal section 12.  Proposition 9 did, however, include a provision entitled "Conflicts with Existing Law" which specifically stated:  "It is the intent of the People of the State of California in enacting this act that if any provision in this act conflicts with an existing provision of law which provides for greater rights of victims of crime, the latter provision shall apply."  (Voter Information Guide, Gen. Elec., *supra*, text of Prop. 9, § 7, p. 132, block capitalization omitted.)

### B.  The *Humphrey* Decision

To round out the constitutional landscape pertaining to bail, we discuss the California Supreme Court's decision in *In re Humphrey* (2021) 11 Cal.5th 135 (*Humphrey*).

In *Humphrey*, the charges against the 66-year-old petitioner included first degree residential robbery and burglary, infliction of injury on an elderly victim, and four prior strike allegations.  (*Humphrey*, *supra*, 11 Cal.5th at pp. 143–144.)  In seeking OR release without any condition of money bail, the petitioner cited his age, community ties, financial condition, history of appearing in court, remoteness of his prior offenses, as well as the fact that the charged offenses involved the alleged taking of $7 and a bottle of cologne

from the victim. (*Id.* at p. 144.) The court set bail at $600,000, then later at $350,000, despite the petitioner's protestations that he could not afford these bail amounts. (*Id.* at pp. 144–145.) After the Court of Appeal granted habeas relief, the California Supreme Court granted review "to address the constitutionality of money bail as currently used in California as well as the proper role of public and victim safety in making bail determinations." (*Id.* at p. 147.)

Ultimately, the Supreme Court held it unconstitutional to detain arrestees solely because they lack financial resources. (*Humphrey, supra*, 11 Cal.5th at p. 156.) In so holding, the court emphasized that bail determinations require "an individualized consideration of the relevant factors," including "the protection of the public as well as the victim, the seriousness of the charged offense, the arrestee's previous criminal record and history of compliance with court orders, and the likelihood that the arrestee will appear at future court proceedings." (*Humphrey, supra*, 11 Cal.5th at p. 152, citing §§ 12, 28(b)(3), (f)(3); Pen. Code, § 1275, subd. (a)(1).)

The *Humphrey* court underscored the following general framework for pretrial release and detention determinations: "Where the record reflects the risk of flight or a risk to public or victim safety, the court should consider whether nonfinancial conditions of release may reasonably protect the public and the victim or reasonably assure the arrestee's presence at trial. If the court concludes that money bail is reasonably necessary, then the court must consider the individual arrestee's ability to pay, along with the seriousness of the charged offense and the arrestee's criminal record, and—unless there is a valid basis for detention—set bail at a level the arrestee can reasonably afford. And if a court concludes that public or victim safety, or the arrestee's appearance in court, cannot be reasonably assured if the arrestee is released,

12

it may detain the arrestee only if it first finds, by clear and convincing evidence, that no nonfinancial condition of release can reasonably protect those interests." (*Humphrey, supra*, 11 Cal.5th at p. 154.) In sum, "detention is impermissible unless no less restrictive conditions of release can adequately vindicate the state's compelling interests." (*Id.* at pp. 151–152.)

As relevant here, the *Humphrey* court expressly noted that "[e]ven when a bail determination complies with the above prerequisites, the court must still consider whether the deprivation of liberty caused by an order of pretrial detention is consistent with state statutory and constitutional law specifically addressing bail—a question not resolved [in *Humphrey*]—and with due process." (*Humphrey, supra*, 11 Cal.5th at p. 155, fn. omitted.) In a footnote accompanying this statement, the court noted it was leaving unresolved the question of whether section 12 and section 28(f)(3) "can or should be reconciled, including whether these provisions authorize or prohibit pretrial detention of noncapital arrestees outside the circumstances specified in section 12, subdivisions (b) and (c)." (*Humphrey*, at p. 155, fn. 7; *In re White* (2020) 9 Cal.5th 455, 470.) As indicated, the California Supreme Court has directed us to resolve that open issue in this case.

**C. Analysis**

Before turning to the question presented, we address petitioner's claim that section 28(f)(3) is completely inoperative because Proposition 8 never took effect in 1982. We review this issue de novo. (*Taxpayers for Accountable School Bond Spending v. San Diego Unified School Dist.* (2013) 215 Cal.App.4th 1013, 1026 (*Taxpayers for Accountable School Bond Spending*).)

*1. Section 28(f)(3) is fully operative*

In contending section 28(f)(3) is inoperative, petitioner emphasizes that the ballot materials accompanying Proposition 9 made no mention of the

13

Supreme Court's decision holding that Proposition 8's similar bail provisions were inoperative; nor did the materials otherwise indicate the voters were being asked to "re-enact" or effectuate the inoperative bail provisions of section 28(e). Thus, petitioner claims, the voters' 2008 approval of Proposition 9 did not reflect an intent to resuscitate the inoperative bail and OR provisions of Proposition 8, and section 28(f)(3) must be deemed inoperative. Alternatively, petitioner posits that effect should be given only to the "genuinely new material" of section 28(f)(3), i.e., only those portions of the constitutional text that were italicized in the ballot materials.[5]

"Under the California Constitution, '[t]he legislative power of this State is vested in the California Legislature . . . but the people reserve to themselves the powers of initiative and referendum.' (Cal. Const., art. IV, § 1.)" (*Wilde v. City of Dunsmuir* (2020) 9 Cal.5th 1105, 1111.) The initiative power is " 'one of the most precious rights of our democratic process' " (*Associated Home Builders etc., Inc. v. City of Livermore* (1976) 18 Cal.3d 582, 591), and "courts have consistently declared it their duty to ' "jealously guard" ' and liberally construe the right so that it ' "be not improperly annulled" ' " (*California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 934). " 'If doubts can reasonably be resolved in favor of the use of this reserve power, courts will preserve it.' " (*Associated Home Builders*, at p. 591.) In analyzing challenges to the exercise of the initiative power, courts generally assume that, when voters are provided the whole text of a proposed constitutional amendment, they have considered each aspect of the law and

___

[5] In their joint amicus brief in support of petitioner, the American Civil Liberties Union of Northern and Southern California, the California Public Defenders Association, Crime Survivors for Safety and Justice, and the Public Defender of Ventura County (hereafter amici) essentially advance this the same argument, as well as a few other of petitioner's arguments.

voted intelligently.  (See *Brosnahan v. Brown* (1982) 32 Cal.3d 236, 252 (*Brosnahan*).)

Here, there is no dispute that the voters were provided the entire text of Proposition 9.  Thus, when the voters cast their ballots, they presumably considered each aspect of the law and voted intelligently to approve all of its terms, including the whole of section 28(f)(3).  (*Brosnahan*, *supra*, 32 Cal.3d at p. 252.)  That the ballot materials omitted to mention section 28(f)(3)'s similarity to bail provisions previously deemed inoperative despite voter approval in 1982 provides no basis for its annulment.

In arguing to the contrary, petitioner directs our attention to Elections Code section 9086, subdivision (f), which provides:  "The provisions of the proposed measure differing from the *existing laws* affected shall be distinguished in print, so as to facilitate comparison."  (Italics added.)  Pointing to a paragraph in the 2008 ballot materials that explains "new provisions proposed to be added are printed in *italic type* to indicate that they are new" (see *ante*, fn. 4), petitioner argues that, at best, the voters intended to enact only those few italicized words and phrases within section 28(f)(3) of Proposition 9, i.e., "*the safety of the victim*," "*and the safety of the victim*," "*considerations*," and "*and the victim.*"

We express no view as to whether Elections Code section 9086, subdivision (f), would have required the entirety of section 28(f)(3) to be italicized, had a timely challenge to the typeface in the Voter Pamphlet been filed.  Elections Code section 9086 is silent as to whether italicization is appropriate for laws that technically exist but have been deemed inoperative, such as the bail provisions at issue.  Here, petitioner cites no authority for the view that, despite section 28(f)(3)'s approval by the voters, only its italicized portions should be given effect.  Indeed, when excised from the

15

sentences they appear in, the words and phrases that were italicized in section 28(f)(3) did not convey a complete idea and had no real meaning beyond their conceptual references. Contrary to petitioner's contention, there simply is no basis for believing that the voters intended to enact certain select words and phrases divorced from the contextual language that gave them meaning.

> ### 2. *Section 12 and section 28(f)(3) can be reconciled and each given full effect*

We now address whether section 12(b) and (c) or section 28(f)(3) governs the denial of bail in noncapital cases, or alternatively, whether these provisions can be reconciled. This is a matter of constitutional interpretation, which we undertake de novo. (*Taxpayers for Accountable School Bond Spending, supra*, 215 Cal.App.4th at p. 1026.)

We focus first on the meaning of these constitutional provisions. For this task, we adhere to well established principles similar to those governing statutory construction. (*Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431, 444.) Our goal is to ascertain the intent of the lawmakers "so as to effectuate the purpose of the law." (*People v. Canty* (2004) 32 Cal.4th 1266, 1276 (*Canty*).) We start by examining the language of the constitutional provisions, " ' "giving the words their usual, ordinary meaning." ' " (*Ibid*.) If the language is clear and unambiguous, we follow its plain meaning. (*Ibid*.) We construe the language in the context of the measures as a whole and the overall legislative scheme, according significance to every word, phrase, and sentence in order to achieve the legislative purpose. (*Ibid*.) "The intent of the law prevails over the letter of the law, and ' "the letter will, if possible, be so read as to conform to the spirit of the act." ' " (*Id*. at pp. 1276–1277.) Once we ascertain the meaning of each constitutional provision, we will be positioned to determine which

16

provision governs the denial of bail in noncapital cases or whether the two provisions can be reconciled.

To reiterate, section 12 provides in relevant part:  "A person shall be released on bail by sufficient sureties, except for:  [¶] (a) Capital crimes . . . ; [¶] (b) Felony offenses involving acts of violence on another person, or felony sexual assault offenses on another person . . . and the court finds . . . that there is a substantial likelihood the person's release would result in great bodily harm to others; or [¶] (c) Felony offenses . . . and the court finds . . . that the person has threatened another with great bodily harm and that there is a substantial likelihood that the person would carry out the threat if released."  Section 12 further provides:  "Excessive bail may not be required. In fixing the amount of bail, the court shall take into consideration the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at the trial or hearing of the case.  [¶] A person may be released on his or her own recognizance in the court's discretion."

Section 28(f)(3) provides in full:  "Public Safety Bail.  A person may be released on bail by sufficient sureties, except for capital crimes when the facts are evident or the presumption great.  Excessive bail may not be required.  In setting, reducing or denying bail, the judge or magistrate shall take into consideration the protection of the public, the safety of the victim, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at the trial or hearing of the case.  Public safety and the safety of the victim shall be the primary considerations.  [¶] A person may be released on his or her own recognizance in the court's discretion, subject to the same factors considered in setting bail. [¶] Before any person arrested for a serious felony may be released on bail, a

17

hearing may be held before the magistrate or judge, and the prosecuting attorney and the victim shall be given notice and reasonable opportunity to be heard on the matter. [¶] When a judge or magistrate grants or denies bail or release on a person's own recognizance, the reasons for that decision shall be stated in the record and included in the court's minutes."

The principal dispute centers around the language in the first sentence of each of these constitutional provisions. Specifically, the lead clauses are virtually identical except that section 12 states that a person "*shall be* released on bail by sufficient sureties," while section 28(f)(3) says that a person "*may be* released on bail by sufficient sureties." (Italics added.) The precise inquiry is this: What is the meaning of the seemingly permissive language in section 28(f)(3), and can it be reconciled with the mandatory language in section 12, which embodies a longstanding "constitutional right to be released on bail pending trial" in noncapital cases subject to two exceptions? (*Standish*, *supra*, 38 Cal.4th at p. 878; see Cal. Const. of 1849, art. I, § 7; *In re Law* (1973) 10 Cal.3d 21, 25.)

Turning to section 28(f)(3)'s use of the term "may," we observe that, ordinarily and presumptively, "may" is permissive. (*Standish*, *supra*, 38 Cal.4th at p. 869.) "May" is a term that also refers to an expression of possibility. (Black's Law Dictionary (11th ed. 2019) p. 1172, col. 2.) Given that section 12 was fully operative when Proposition 9 was presented to the voters and approved, the most natural reading of section 28(f)(3)'s phrase "[a] person *may* be released on bail by sufficient sureties" is that the phrase is a declarative statement of existing law. (Italics added.) That is, the phrase acknowledges that a person may or may not be released on bail, consistent with the dictates in section 12 that a person is generally entitled to bail release in noncapital cases except under the circumstances articulated in

18

section 12(b) and (c), or (as will be discussed below) when a person may not be able to post bail as set.

Construing section 28(f)(3) in this manner fully promotes the voters' intent to "preserve and protect" the right of crime victims "to justice and due process" by having "the safety of the victim and the victim's family considered in fixing the amount of bail and release conditions for the defendant." (Voter Information Guide, Gen. Elec. (Nov. 4, 2008), text of Prop. 9, § 4.1, p. 129; *id.*, arguments in favor of Prop. 9, p. 62.) Section 28(f)(3) accomplishes this by requiring that (1) all bail determinations take into consideration and give primacy to protection of the public and victim safety[6]; (2) all OR determinations be subject to the same factors considered in setting bail; and (3) victims be notified and provided a reasonable opportunity to be heard "[b]efore any person arrested for a serious felony may be released on bail." At the same time, these victim safety provisions do not conflict with section 12 or otherwise impede its operation; they simply mandate additional considerations in bail and OR determinations in noncapital cases. Accordingly, construing the first sentence of section 28(f)(3) as declarative of the general right to bail allows for complete reconciliation of section 28(f)(3) and section 12.

The People advance a different construction of section 28(f)(3), essentially contending the phrase "[a] person *may* be released on bail by sufficient sureties" must be interpreted as a grant of judicial discretion to deny bail release in all noncapital cases. (Italics added.) Such construction, of course, would mean that section 28(f)(3) is in direct conflict with section 12

---

[6] Sections 28(f)(3) and 12 both additionally require consideration of "the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of [the defendant] appearing at the trial or hearing of the case."

and its limited exceptions for denying bail release in certain noncapital cases. Setting aside for a moment the strong presumption against implied repeal, the People's construction finds no support in the text of section 28 or in the ballot materials accompanying Proposition 9.

Apart from the People's proffered interpretation of section 28(f)(3)'s first sentence, the text of section 28 contains no language indicating an intent to broaden the authority of judges and magistrates to deny bail. Indeed, when the measure mentions the topic of bail, it does so in a manner that is fully consistent with the terms of section 12. For instance, section 28's prefatory declarations include a finding that the rights of crime victims "encompass the expectation" shared by all Californians that, prior to trial, "*persons who commit felonious acts causing injury to innocent victims* will be . . . *appropriately detained in custody*." (§ 28, subd. (a)(4), italics added.) Not only does this finding align with section 12's contemplation that pretrial bail release may be denied in certain serious felony cases, but the specificity of the italicized language counters any suggestion that judges were being given discretion to deny bail to any person accused of committing a noncapital offense.

Similarly, the ballot materials accompanying Proposition 9 featured an impartial analysis by the Legislative Analyst that specifically informed the voters: "The Constitution would be changed to specify that the safety of a crime victim must be taken into consideration by judges in setting bail for persons arrested for crimes." (Voter Information Guide, Gen. Elec., *supra*, analysis of Prop. 9 by the Legislative Analyst, p. 59.) While that analysis accurately conveyed the measure's intent to add victim safety as a new mandatory consideration for bail determinations, the Legislative Analyst offered no view that the measure would completely eliminate the historic

20

right to bail which has existed in the California Constitution since 1849. Nor did the arguments for and against Proposition 9 suggest that the measure would expand judicial discretion to deny bail release beyond the exceptions in section 12(b) and (c). (Voter Information Guide, Gen. Elec., *supra*, arguments in favor of Prop. 9 and rebuttal to argument in favor of Prop. 9, pp. 62–63.)

Moreover, where, as here, a later law contains no terms explicitly providing for repeal of existing law, we must contend with the strong presumption against repeal by implication. (*Western Oil & Gas Assn. v. Monterey Bay Unified Air Pollution Control Dist.* (1989) 49 Cal.3d 408, 419–420.) To overcome this presumption, the bail provisions of sections 12 and 28(f)(3) " 'must be irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation.' " (*Western Oil & Gas*, at pp. 419–420.) Put another way, " '[t]here must be '*no possibility* of concurrent operation.' " (*Ibid.*, italics added.)

As discussed, sections 28(f)(3) and 12 are easily reconciled by giving a natural reading to the first sentence of section 28(f)(3) and understanding its meaning as a declarative statement of existing law. Such construction respects the longstanding constitutional right to bail as embodied in section 12, while also fully effectuating Proposition 9's constitutionally mandated considerations of public and victim safety in all bail and OR release determinations. Consequently, there appears no basis for finding a repeal by implication.

In reaching this conclusion, we acknowledge that in *Standish*, *supra*, 38 Cal.4th 858, our Supreme Court determined that the bail provisions previously approved in Proposition 8—which were nearly identical to those in section 28(f)(3)—were in direct conflict with the bail provisions approved in Proposition 4—which amended section 12 with the language existing today.

21

(*Standish*, at pp. 877–878.)  That finding of conflict, however, is neither dispositive nor persuasive in the present matter.

Significantly, the *Standish* court was faced with the circumstance that section 28(e), as proposed in Proposition 8, explicitly called for the repeal and substitution of section 12.  (*Standish*, *supra*, 38 Cal.4th at p. 877.)  Because the repeal clause would eliminate the constitutional right to bail enshrined in section 12, then by necessity section 28(e) had to articulate its own constitutional parameters for the availability of bail.  Thus, section 28(e)'s use of the permissive term "may" was properly understood as rendering "bail discretionary in all cases."  (*Standish*, at p. 877.)  In stark contrast, Proposition 9 had no repeal clause and thus presented the voters with bail release provisions that, presumably, would have to operate concurrently with the existing constitutional provision recognizing the right to bail in most noncapital cases.  For the reasons discussed, our reading of section 28(f)(3) is the most natural one given the operative provisions of section 12.

In sum, we interpret the first sentence of section 28(f)(3) as a declarative statement recognizing that bail may or may not be denied under existing law.  Under this construction, section 12's general right to bail remains intact, while full effect is accorded to section 28(f)(3)'s mandate that the rights of crime victims be respected in bail and OR release determinations.

### 3. *Bail and OR release after* Humphrey

As indicated, section 12 provides that a person "shall be released on bail by sufficient sureties" except for capital crimes and specific felony offenses.  Having concluded that sections 12 and 28(f)(3) must be given concurrent effect, we turn to petitioner's contention that section 12 guarantees an "absolute right to pretrial release" and requires courts to set

22

bail at an amount a defendant can afford. For the reasons below, we reject petitioner's expansive and novel reading of section 12.

First, petitioner's contention finds no support in the plain language of section 12. The phrase "released on bail by sufficient sureties" as used in both sections 12 and 28(f)(3) generally refers to the state of being released from custody after the posting of some sufficient security such as "cash, property, or (more often) a commercial bail bond—which is forfeited if the arrestee later fails to appear in court." (*Humphrey*, *supra*, 11 Cal.5th at p. 142; Pen. Code, §§ 1268, 1269; accord *Stack v. Boyle* (1951) 342 U.S. 1, 5.) A "surety" is: "1. Someone who is primarily liable for paying another's debt or performing another's obligation" or "2. A formal assurance; esp., a pledge, bond, guarantee, or security given for the fulfillment of an undertaking." (Black's Law Dict. (11th ed. 2019) p. 1742, col. 2; Civ. Code, § 2787 [enacted in 1872 and defining a surety as "one who promises to answer for the debt, default, or miscarriage of another, or hypothecates property as security therefor"].)

Although we have found no California case expressly interpreting the phrase "sufficient sureties," the phrase must be construed in conjunction with section 12's requirement that trial courts fix the amount of bail upon consideration of "the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at the trial or hearing of the case." When viewed as a whole, and with reference to section 28(f)(3)'s additional considerations of public and victim safety, the most natural reading of section 12 is that a person has a right to be released upon the posting of a sufficient security which a court, in its discretion, determines is adequate to accomplish the purposes of bail, i.e., to protect public and victim safety and to ensure a defendant's presence in court.

(§§ 12; 28(b)(3), (f)(3).)  This construction clearly promotes the constitutionally-based policy purposes of bail, while a contrary construction that categorically requires release on affordable bail does not.

Indeed, our construction comports with the long history of section 12, which has never been understood as mandating affordable bail.  At the time our state Constitution was drafted in 1879, people were routinely confined in jail for want of bail.  (1 Willis & Stockton, Debates and Proceedings, Cal. Const. Convention 1878–1879 (1880), p. 310 ["the vast majority of those who are committed for various offenses under felonies are persons who are unable to give bail"]; *id.* at p. 317 ["if [a man] [is] poor and unable to give bail, he must go to jail, there to remain perhaps for months to await the meeting of the Grand Jury"]; 3 Willis & Stockton, *supra*, at p. 1188 ["Sometimes we lock men up because they cannot give bail"].)  Section 12 and its predecessors sought to curtail this all-too-common situation by expressly recognizing a right to bail in most cases, and by prohibiting the imposition of excessive bail.  But neither of these constitutional provisions has ever been construed as imposing an absolute requirement that bail be affordable.[7]

---

[7]     The language of section 12 is materially identical to clauses in the Constitutions of our sister states.  (E.g., Iowa Const., art. I, § 12 ["All persons shall, before conviction, be bailable, by sufficient sureties, except for capital offences where the proof is evident, or the presumption great."]; N.M. Const., art. II, § 13 ["All persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or the presumption great and in situations in which bail is specifically prohibited by this section"]; Ariz. Const., art. II, § 22 ["All persons charged with crime shall be bailable by sufficient sureties, except . . ."]; Ill. Const., art. I, § 9 ["All persons shall be bailable by sufficient sureties, except for the following offenses where the proof is evident or the presumption great . . ."].)

Our interpretation of section 12 is in line with the case law interpreting these sister state Constitutions.  (E.g., *State v. Briggs* (Iowa 2003) 666

Notably, petitioner's position that bail must be affordable was essentially rejected well over a century ago in the cases of *Ex parte Duncan* (1879) 53 Cal. 410 (*Duncan I*) and *Ex parte Duncan* (1879) 54 Cal. 75 (*Duncan II*), in which a prisoner twice sought relief by habeas corpus to have his bail amount lowered, and twice the high court denied relief. (*Duncan I*, at pp. 411–412; *Duncan II*, at pp. 76, 80.) In *Duncan I*, the court indicated that the setting of the amount of bail was a matter of judicial discretion, to be interfered with on review only when the amount was excessive, i.e., " *'per se* unreasonably great and clearly disproportionate to the offense involved,' etc." (*Duncan I*, at p. 411.)

More significantly, in *Duncan II*, the court confronted and rejected the argument that a bail amount is excessive simply because a prisoner is unable to procure it. (*Duncan II*, *supra*, 54 Cal. at pp. 77–78.) As *Duncan II* explained, "Undoubtedly the extent of the pecuniary ability of a prisoner to furnish bail is a circumstance among other circumstances to be considered in fixing the amount in which it is to be required, but it is not in itself controlling. *If the position of the counsel were correct, then the fact that the prisoner had no means of his own, and no friends who were able or willing to become sureties for him, even in the smallest sum, would constitute a case of*

---

N.W.2d 573, 582; *People ex rel. Gendron v. Ingram* (1966) 34 Ill. 2d 623, 626 (["Sufficient, as used in the [Illinois] constitution, means sufficient to accomplish the purpose of bail, not just the ability to pay in the event of a 'skip']; *State v. Gutierrez* (N.M.Ct.App. 2006) 140 N.M. 157, 162; *Fragoso v. Fell* (Ariz.Ct.App. 2005) 210 Ariz. 427, 433; see also *State v. Brooks* (Minn. 2000) 604 N.W.2d 345, 350 [explaining that Pennsylvania's law—which permitted all prisoners to be " 'Bailable by Sufficient Sureties' "—"became the model for almost every state constitution adopted after 1776" and two-thirds of state constitutions contain similar or identical language], italics omitted.)

25

*excessive bail, and would entitle him to go at large upon his own recognizance.*" (*Duncan II*, at p. 78, italics added.)

Taken together, the *Duncan* cases implicitly recognized that unaffordable bail is not per se excessive and that, aside from prohibiting a bail amount disproportionate to the circumstances, the California Constitution's bail provision—now in section 12—did not require bail in an affordable amount.

We now address the extent to which the California Supreme Court's decision in *Humphrey* affects the historical understanding and operation of section 12's bail provisions. In holding that the denial of bail must comport with due process and equal protection principles, the *Humphrey* court carefully explained that "where a financial condition is . . . necessary, the court must consider the arrestee's ability to pay the stated amount of bail— and may not effectively detain the arrestee '*solely* because' the arrestee 'lacked the resources' to post bail." (*Humphrey*, *supra*, 11 Cal.5th at p. 143, italics added.)

Although the *Humphrey* court made clear that a trial court must consider a defendant's ability to pay in making a bail determination, *Humphrey* did not suggest that a court is precluded from setting bail at an amount beyond a defendant's means when necessitated by the circumstances presented. To the contrary, *Humphrey* explicitly recognized that "[i]n unusual circumstances, the need to protect community safety may conflict with the arrestee's fundamental right to pretrial liberty—a right that also generally protects an arrestee from being subject to a monetary condition of release the arrestee can't satisfy—to such an extent that no option other than refusing pretrial release can reasonably vindicate the state's compelling interests. In order to detain an arrestee under those circumstances, a court

26

must first find by clear and convincing evidence that no condition short of detention could suffice and then ensure the detention otherwise complies with statutory and constitutional requirements. [Citation.] [¶] *Detention in these narrow circumstances doesn't depend on the arrestee's financial condition. Rather, it depends on the insufficiency of less restrictive conditions to vindicate compelling government interests: the safety of the victim and the public more generally or the integrity of the criminal proceedings.* Allowing the government to detain an arrestee without such procedural protections would violate state and federal principles of equal protection and due process that must be honored in practice, not just in principle." (*Ibid.*, italics added.)

Reasonably read, the foregoing passage in *Humphrey* meaningfully restricts, but does not purport to eliminate, the traditional power of a court to set bail at an amount that may prove unaffordable, so long as the court—after undertaking an individualized consideration of all relevant factors including the defendant's ability to pay—makes the necessary findings to support a detention. That is, the court must find clear and convincing evidence that no other conditions of release, including affordable bail, can reasonably protect the state's interests in assuring public and victim safety and the arrestee's appearance in court. (*Humphrey*, *supra*, 11 Cal.5th at pp. 143, 152–154.)

Thus, when a court sets bail at an amount higher than a person can likely afford after finding clear and convincing evidence that no conditions short of detention can vindicate these compelling state interests, it cannot be said that the court "effectively detain[ed]" the person " '*solely* because' " the person " 'lacked the resources' to post bail." (*Humphrey*, *supra*, 11 Cal.5th at p. 143, italics added.) Though the person's inability to post the court-ordered bail amount necessarily results in the person's detention, the person's

27

financial condition is not the determinate cause of detention. Rather, the determinate cause of the detention is the court's finding that no other conditions short of detention are sufficient to vindicate the state's interests. (See *United States v. Fidler* (9th Cir. 2005) 419 F.3d 1026, 1028 ["de facto detention" when defendant is unable to comply with a financial condition does not violate the federal Bail Reform Act if the record shows "the detention is not based solely on the defendant's inability to meet the financial condition, but rather on the district court's determination that the amount of the bond is necessary to reasonably assure the defendant's attendance at trial or the safety of the community"]; *United States v. McConnell* (5th Cir. 1988) 842 F.2d 105, 108–110.)

We acknowledge the recent decision in *In re Brown* (2022) 76 Cal.App.5th 296 (*Brown*) offers an alternative interpretation of *Humphrey*. As a preliminary matter, we observe the *Brown* court summarizes *Humphrey* as follows: "Having considered potential nonfinancial conditions, if the trial court nonetheless concludes money bail is 'reasonably necessary' to protect the public and ensure the arrestee's presence at trial, then bail must be set 'at a level the arrestee can reasonably afford' unless the court concludes, by clear and convincing evidence, that no nonfinancial condition in conjunction with affordable money bail can reasonably protect public safety or arrestee appearance. (*Humphrey*, *supra*, 11 Cal.5th at p. 154.)" (*Brown*, at pp. 305–306.)

While we concur in the foregoing summary, we cannot agree with the *Brown* court's conclusion that, when a trial court makes the required finding above, then *Humphrey* leaves a court with no option other than to formally order pretrial detention. For one thing, such a conclusion appears at odds with the historical understanding of section 12's general right to release on

28

bail by sufficient sureties, and *Humphrey* did not disavow that understanding. Moreover, *Humphrey* repeatedly acknowledged that an outright pretrial detention order would not offend the due process clause in those rare instances in which a court concludes, by clear and convincing evidence, that no nonfinancial condition in conjunction with affordable money bail can reasonably protect the state's compelling interests in public safety or arrestee appearance. (*Humphrey*, *supra*, 11 Cal.5th at pp. 143, 154, 156.) If, in balancing the liberty interest of an accused with the state's compelling interests, an outright pretrial detention order would be appropriate, then *a fortiori* a bail order in an amount higher than a defendant can afford would also be appropriate.[8]

## CONCLUSION

In closing, we summarize our answer to the California Supreme Court's question and explain our view of the framework governing bail determinations as informed by the principles in *Humphrey*.

Section 28(f)(3) became fully operative when the voters approved Proposition 9 in 2008, and its bail provisions can be fully reconciled with those in section 12, as follows. When a defendant's case falls outside the circumstances specified in section 12, subdivisions (a) through (c), the

---

[8] We note it can be difficult to know with any certainty what a defendant might in good faith be able to afford in terms of bail. But if a defendant truly cannot afford to post any bail, then arguably all that remains, in effect, is OR release. (Black's Law Dict. (11th ed. 2019) p. 1543, col. 2 ["release on recognizance" means "[t]he pretrial release of an arrested person who promises, usually in writing but without supplying a surety or posting bond, to appear for trial at a later date"]; Pen. Code, §§ 1270, 1318.) Both sections 12 and 28(f)(3) contain OR release provisions that are separate and distinct from their bail provisions and that clearly provide for judicial discretion. (See *Humphrey*, *supra*, 11 Cal.5th at p. 147; *York*, *supra*, 9 Cal.4th at pp. 1139–1141.)

defendant has a general right under sections 12 and 28(f)(3) to be released on bail by sufficient sureties, or to be released on OR in the court's discretion, subject to the considerations below.

In fixing the amount of bail and release conditions, or in exercising its discretion to release a person on OR, courts must consider the protection of the public, the safety of the victim, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of the defendant appearing at the trial or hearing of the case. (§§ 12, 28(b)(3) & (f)(3).) Public safety and the safety of the victim shall be the primary considerations. (§ 28(f)(3).)

"In those cases where the arrestee poses little or no risk of flight or harm to others, the court may offer OR release with appropriate conditions. [Citation.] Where the record reflects the risk of flight or a risk to public or victim safety, the court should consider whether nonfinancial conditions of release may reasonably protect the public and the victim or reasonably assure the arrestee's presence at trial. If the court concludes that money bail is reasonably necessary, then the court must consider the individual arrestee's ability to pay, along with the seriousness of the charged offense and the arrestee's criminal record, and—unless there is a valid basis for detention—set bail at a level the arrestee can reasonably afford. And if a court concludes that public or victim safety, or the arrestee's appearance in court, cannot be reasonably assured if the arrestee is released, it may detain the arrestee only if it first finds, by clear and convincing evidence, that no nonfinancial condition of release can reasonably protect those interests." (*Humphrey*, *supra*, 11 Cal.5th at p. 154.) Though excessive bail cannot be imposed, courts are not required to set bail at an amount a defendant will necessarily be able to afford. Before a court sets bail at an amount higher

30

than a person can likely afford, it must make the aforementioned findings necessary to support a detention.

Finally, we reiterate the fundamental principle that "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." (*United States v. Salerno* (1987) 481 U.S. 739, 755.) While section 12 does not prohibit courts from fixing bail at an amount a defendant likely cannot meet, it will be the rare case where such a monetary condition is truly necessary to sufficiently protect the state's compelling interests in public and victim safety and in ensuring appearances in court.

## DISPOSITION

Having answered the question posed to us by the California Supreme Court, we dismiss the petition for writ of habeas corpus as moot.

_____

Fujisaki, J.

WE CONCUR:

_____

Tucher, P.J.

_____

Rodríguez, J.

Trial Court:        San Mateo County Superior Court

Trial Judge:        Hon. Susan Greenbert

Counsel:            Law Offices of Marsanne Weese, Marsanne Weese, Rose
                    Mishaan; Civil Rights Corps, Carson White, Katherine
                    Hubbard, Salil Dudani, and Alec Karakatsanis for
                    Petitioner

                    ACLU Foundation of Northern California, Avram Frey,
                    Mica Doctoroff, Emi Young; ACLU Foundation of
                    Southern California, Summer Lacey for American Civil
                    Liberties Union of Northern California, American Civil
                    Liberties Union of Southern California, California
                    Public Defenders Association, Crime Survivors for
                    Safety and Justice, and Claudia Y. Bautista, Ventura
                    County Public Defender as Amicus Curiae on behalf of
                    Petitioner

                    Stephen M. Wagstaffe, District Attorney of San Mateo
                    County, Lechelle Mercier, Law Clerk, Bryan Abanto
                    and Joshua Martin, Deputy District Attorneys for Real
                    Party in Interest


*In re Kowalczyk* (A162977)